UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENNIS GLAZE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:05-cv-1546-DFH-WTL |
| ) | |
| SYSCO CORPORATION, AETNA LIFE ) | |
| INSURANCE COMPANY and SYSCO ) | |
| CORPORATION GROUP BENEFIT PLAN, ) | |
| ) | |
| Defendants. ) | |

ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Dennis Glaze was a truck driver for Sysco Food Services of Indianapolis, LLC from 1993 until 2002 when renal failure forced him off the job. As a participant in defendant Sysco Corporation's Group Benefit Plan, Glaze applied for and has received long-term disability benefits from defendant Aetna Life Insurance Company. Glaze claims in this lawsuit that defendants have violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Glaze claims: (1) the claims administrator applied the terms of the Group Benefit Plan in an arbitrary and capricious manner when it awarded him a benefit of $1,768 per month; (2) the claims administrator improperly withheld some monthly payments to recoup previously overpaid amounts; and (3) the plan administrator failed to provide him with copies of plan documents upon request. Both sides have moved for summary judgment. Because Aetna acted

within its rights under the Group Benefit Plan and Glaze failed to provide Sysco Corporation with clear notice of his need for plan documents, Glaze's motion for summary judgment is denied and defendants' motion for summary judgment is granted.[1]

*Standard of Review*

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The fact that the parties have filed cross-motions for summary judgment does not affect the applicable standard; the court should deny both motions if there is a genuine issue of material fact. See, *e.g.*, *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993). Because the court is granting defendants' motion for summary judgment, the court sets forth the undisputed facts and any disputed facts in the light reasonably most favorable to plaintiff.

The plan at issue in this case gives claims administrator Aetna Life Insurance Company "discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy." R. 400. The Plan also provides that "Aetna shall be deemed to have properly exercised such authority unless Aetna

---

[1]Glaze had also claimed earlier that Aetna violated ERISA by failing to adjust his monthly benefit by the Consumer Product Index. He withdrew this claim in response to defendants' motion for summary judgment. Pl. Reply Br. at 4 n.1.

abuses its discretion by acting arbitrarily and capriciously." *Id.* Under this clear language giving the administrator or fiduciary discretionary authority to determine eligibility for benefits and to interpret the terms of the Plan, the court does not interpret the plan documents *de novo*, but reviews the relevant decisions to determine whether they were arbitrary and capricious. *Militello v. Central States, Southeast and Southwest Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004), citing *Hess v. Hartford Life & Accident Insurance Co.*, 274 F.3d 456, 461 (7th Cir. 2001). Under the arbitrary and capricious standard, a plan administrator's decision will not be overturned if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Militello*, 360 F.3d at 686.

*Discussion*

Plaintiff Dennis Glaze was employed as a truck driver for Sysco Food Services of Indianapolis, LLC ("Sysco Indianapolis") from April 1993 until June 2002. R. 182, 191. As part of Glaze's employment with Sysco Indianapolis, he participated in the Sysco Corporation Group Benefits Plan (the "Plan") administered by Sysco Corporation ("Sysco") and insured by Aetna Life Insurance Company ("Aetna"). R. 209, 224. Aetna also serves as the claims administrator for the Plan. R. 209. In June 2002, Glaze stopped working due to health problems. In November 2002, Glaze submitted an application for long-term disability benefits to Aetna based on a diagnosis of end-stage renal failure. R. 468-74. Glaze's dialysis treatments, which he underwent three times a week, left him with limited ability to do work. R. 475. Aetna determined in December 2002

that Glaze was disabled and thus eligible for long-term disability benefits under the Sysco Corporation Group Benefit Plan.  R. 485.

Glaze raises three distinct claims.  The specific undisputed facts relevant to each claim are set forth below.

I.     *Overtime Pay and the Calculation of Monthly Benefits*

First, Glaze argues that Aetna incorrectly calculated his monthly long-term benefits by treating some compensation he received from Sysco Indianapolis as "overtime pay" that was excluded from calculating his base pay.  When participants in the Plan suffer injury or disease that renders them unable to earn more than 80% of their predisability income (as Glaze did), the Plan provides a scheduled monthly disability benefit equal to "60% of your monthly predisability earnings." R. 405.  The Plan defines "predisability earnings" as:

> This is the amount of salary or wages you were receiving from an employer participating in this Plan calculated on a monthly basis. It will be figured from the rule below that applies to you.
>
> . . . .
>
> If you are paid on an hourly basis, the calculation of your monthly wages is based on your hourly pay rate on the day before a period of disability started multiplied by the number of hours you are regularly scheduled to work per month; but not more than 173 hours per month.
>
> . . . .
>
> Salary or wages do not include:
> – Commissions.
> – Awards and bonuses.

>    – *Overtime pay.*
>    – Contributions made by your Employer to any deferred compensation arrangement or pension plan.

R. 418-19 (emphasis added).

Glaze's employment was governed by a collective bargaining agreement between Teamsters Local No. 135 and Sysco Indianapolis. Under the agreement, union workers like Glaze earned 1.5 times their base hourly wage when they worked in excess of their regularly scheduled hours. R. 261. Glaze's base wage was $17.00 per hour. The collective bargaining agreement provided for two kinds of work schedules. The first was a "5x8" schedule in which union employees were expected to work five days a week, eight hours a day. R. 261. For any given workday, employees on this schedule were paid a regular hourly rate for the first eight hours. Any time beyond the first eight hours of any workday was paid at 1.5 times the regular rate. R. 261. Alternatively, union workers on a "4x10" schedule were expected to work four days a week, ten hours a day. Employees on this schedule were paid a regular hourly rate for the first ten hours of a workday. They earned 1.5 times the regular rate for any time worked beyond the first ten hours.

Glaze was officially a 5x8 employee and was scheduled to work five days a week for eight hours a day. Based on seniority, however, Glaze was able to reconfigure his schedule to that of a 4x10 employee, while remaining officially a 5x8 employee. He worked ten hours a day, four days a week. He was paid $17.00

per hour for the first eight hours of each day and $25.50 for hours nine and ten, respectively.

After Aetna determined that Glaze qualified for long-term disability benefits, it awarded benefits in the amount of $1,768 per month. This monthly total was based on a pay rate of $17.00 per hour times 40 hours per week.[2] Glaze argues that his actual average hourly rate for 40 hours per week was $18.70, taking into account the eight hours per week that he was paid $25.50 per hour.

In determining Glaze's long-term disability benefits, Aetna had to decide between two interpretations of "overtime pay." As Glaze now advocates, Aetna could have restricted the concept of "overtime pay" to hours Glaze worked over 40 in any given week, thereby categorizing both the $17 pay rate he earned for hours one through eight plus the $25.50 he earned for hours nine and ten of any given day as regular pay. Instead, Aetna adopted an interpretation of "overtime pay" that was based on an eight-hour workday and consistent with Glaze's official status as a 5x8 employee. Aetna gave Glaze credit for the full 40 hours per week

---

[2]Aetna actually awarded Glaze a monthly benefit slightly higher than that required by a $17 per hour rate of pay. Glaze's monthly award was $1,768. When a pay rate of $17 per hour is multiplied by 173 hours per month (the maximum hours Aetna could consider under the Plan), this results in a monthly pay rate of $2,941. The Plan entitles a participant to a benefit equaling 60% of this monthly pay rate; a participant earning $17 per hour therefore would be due $1764.60 in benefits each month (0.6 X $2,941). The $3.40 monthly discrepancy was due to a minor and irrelevant error by Aetna.

that he worked, but treated as overtime the higher pay rate he earned for eight of those hours each week.

Glaze argues that Aetna's interpretation of "overtime pay" was arbitrary and capricious. Apart from the merits of the issue, it is undisputed that this lawsuit is the first time Glaze raised this issue. As a general rule, a plaintiff's failure to exhaust administrative remedies should preclude judicial consideration of the underlying claim under ERISA. *Dougherty v. Indiana Bell Telephone Co.*, 440 F.3d 910, 919 (7th Cir. 2006), citing *Stark v. PPM America, Inc.*, 354 F.3d 666, 672 (7th Cir. 2004). This discretionary rule applies to specific issues a plaintiff might raise against an administrator's decision. *Dougherty*, 440 F.3d at 919. At the administrative level, Glaze contested the calculation of his long-term disability benefits on two grounds only: (1) that he actually worked 50 or 55 hours per week, which should all be counted toward calculating his benefit; and (2) that in addition to straight time pay at $17.00 per hour, Aetna's calculation of his benefits should have included his compensation for mileage he drove each day. Aetna rejected both of these arguments, and Glaze does not contest those issues in this lawsuit. Instead, Glaze argues for the first time that Aetna improperly concluded that wages earned in hours nine and ten of his normal workday amounted to overtime.

The exhaustion requirement bars consideration of this newly raised issue. Glaze's failure to seek administrative review of this claim frustrates the policy

reasons for the exhaustion requirement. Exhaustion is favored because "the plan's own review process may resolve a certain number of disputes; the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review; and an exhaustion requirement encourages private resolution of internal employment disputes." *Ames v. American Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999); see also *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 808 (7th Cir. 2000) (exhaustion minimizes the number of frivolous lawsuits, decreases the cost and time necessary for claim settlement, and ensures "the compilation of a complete record in preparation for judicial review"). Aetna never had the chance to focus on this distinct issue when considering Glaze's case and hence did not have the chance to change its position on the matter. As a consequence of Glaze's failure to exhaust, the record is in a posture less amenable to review. There are no detailed explanations from Aetna about why it chose to interpret "overtime pay" in the manner it did.

Glaze argues that he should be excused from exhausting administrative remedies on this claim. Failure to exhaust may be excused: (1) if there is a lack of meaningful access to review procedures, or (2) if pursuing internal remedies would be futile. *Stark*, 354 F.3d at 671, citing *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231 (7th Cir. 1997). Glaze contends that any attempt to review the overtime issue with Aetna would have been futile. This point is belied, however, by the fact that Aetna (and Sysco) took the time to explain fully and carefully why Glaze's appeal failed on the issues he did properly raise. See

*Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 659 (7th Cir. 1992) (the futility exception applies only when "it is certain that [the] claim will be denied on appeal, not merely that [plaintiff] doubt[s] an appeal will resut in a different decision"). Nor does Glaze contend that those prior determinations are incorrect. There is no reason to conclude that Aetna would not have given Glaze's new argument similarly thorough consideration.

If the court were to review Aetna's determination based on the record as it now stands, as Glaze urges, there would be no basis for disturbing Glaze's long-term benefit award. Under an arbitrary and capricious standard, "the administrator's decision will only be overturned if it is 'downright unreasonable.'" *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004), quoting *Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999). According to Glaze, "overtime pay" cannot reasonably be understood to be anything but compensation that an employee receives for working in excess of 40 hours in a workweek. By way of support, Glaze alludes to "federal or state statute[s]" requiring employers to pay overtime compensation to employees who work in excess of 40 hours in a week.

While there are certain circumstances in which "overtime pay" connotes compensation for work in excess of 40 hours in a week, this is by no means an exclusive definition. As has been held in other contexts, another ordinary meaning of "overtime" is "work performed in excess of *8 hours in a day* or 40 hours

in a workweek." *Allyn v. United States*, 461 F.2d 810, 813 (Fed. Ct. Claims 1972) (interpreting "overtime" for purposes of the Public Health Services Act) (emphasis added); see also Federal Employees Pay Comparability Act of 1990, 5 U.S.C. § 5542(a) (defining "overtime" for certain federal employees as "hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or . . . in excess of 8 hours in a day").

Glaze's employment situation created, at best, an ambiguity in applying the concept as set forth in the plan. On one hand, hours nine and ten of any given workday fell within Glaze's 40-hour workweek. On the other hand, hours nine and ten fell outside the standard 8-hour workday. There is no reason to conclude that Aetna's resolution of this ambiguity was unreasonable, especially as applied to a 5x8 employee like Glaze, who was expected to work only eight hours a day. R. 261. Glaze himself acknowledges that his so-called "base hourly wage" was $17.00 per hour. Pl. Br. at 3; R. 182, 191. For hours nine and ten, Sysco paid Glaze at 1.5 times this base hourly wage, in a manner typically associated with overtime compensation. See *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818-19 (5th Cir. 1997) ("the concept of 'overtime' ordinarily applies only to hourly employees: once the employee exceeds his assigned number of hours, he is paid at a higher hourly rate for the excess"). Thus, apart from the failure to exhaust administrative remedies, it appears that Aetna could not be said to have acted arbitrarily or capriciously by treating the $25.50 earned by Glaze for hours nine and ten as overtime pay.

II.     *Withholding Benefits to Recoup Overpaid Amounts*

Under the terms of the Plan, Aetna was entitled to offset any payments owed to Glaze by any "other income benefits" Glaze might also receive. R. 405. These "other income benefits" included: "Disability, retirement, or unemployment benefits required or provided for under any law of a government." R. 415. Shortly after Aetna began paying monthly disability benefits to Glaze, it sent a letter asking him to confirm whether he was receiving any "Social Security, workers compensation, work earnings, etc." R. 496. Glaze failed to respond to this and ten other requests sent between January 2003 through March 2005. After Glaze failed to provide the necessary information for over two years, Aetna exercised its rights under the Plan to estimate any Social Security benefits Glaze received. It is undisputed that Glaze had received and Aetna therefore overpaid $30,782.72 between December 2002 and April 2005. To recoup this amount, Aetna exercised its right under the Plan "to stop payment of benefits until the overpayment is recovered." R. 424. Aetna suspended all of Glaze's long-term disability payments after April 2005 in order to recover the overpaid amount. R. 574-80.

Glaze does not challenge Aetna's calculation. He contends instead that ERISA prohibited Aetna from withholding his monthly disability payments to recoup overpaid amounts. Glaze characterizes this as "contractual self-help" and argues that such plan provisions are impermissible under ERISA. The merits of Glaze's argument on this point have been considered and rejected recently by the Seventh Circuit. See *Northcutt v. General Motors Hourly-Rate Employees Pension*

*Plan*, 467 F.3d 1031, 1038 (7th Cir. 2006) (holding that a similar contractual reimbursement arrangement "does not violate any aspect of ERISA . . . nor does it violate a clearly articulated policy of ERISA"). Defendants are therefore entitled to summary judgment on this issue.

Glaze also makes the narrower argument that he was entitled to receive a minimum of $50 in benefit payments each month, even if Aetna had a right to impose a set-off against the full amount of the monthly payments. The Plan allows beneficiaries a "Maximum Monthly Benefit" of $5,000 per month and a "Minimum Monthly Benefit" of $50 per month. R. 405. Glaze argues that the phrase "Minimum Monthly Benefit" requires that he actually receive at least $50 each month, whatever the circumstances. Nothing in the Plan mandates such an interpretation, and Aetna's less expansive interpretation of Glaze's "Minimum Monthly Benefit" is not arbitrary and capricious. See *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (determination of plan administrator to withhold guaranteed monthly minimum payments of $25 under disability plan to recover overpayments did not violate the terms of a plan guaranteeing a $25 monthly minimum).

The Plan states multiple times, without any qualification, that *any* payable amounts may be reduced and withheld. The Plan states: "Any benefit *actually payable* may be reduced by 'other income benefits,'" including Social Security benefits. R. 405 (emphasis added). The Plan section governing Aetna's ability to

recover overpayments is also unequivocal: "If any payments are made in amounts greater than the benefits that you are entitled to receive, Aetna has the right to . . . *stop payment of benefits* until the overpayment is recovered." R. 424 (emphasis added). The Summary Plan Description reads: "The disability benefit payable from the Plan is equal to . . . 60% of your monthly base pay *minus* any income, including Social Security payments, for which you and your dependents are eligible as a result of your disability." R. 202 (emphasis in original). At no point does the Plan exclude or distinguish the $50 minimum monthly benefit from the more general concept of "benefit" as used in these provisions. Aetna's decision to withhold all benefits as a set-off was a permissible interpretation of Plan terms.

III.   *Requests for Plan Documents*

Upon request, an ERISA plan administrator must provide participants with an updated plan summary, a plan description, and the latest instrument under which the plan is established or operated. 29 U.S.C. § 1024(b)(4). Plan administrators who fail to comply with such a request within 30 days may be liable, in the court's discretion, to the plan participant in the amount of up to $100 a day from the date of such failure. 29 U.S.C. § 1132(c)(1).

In a series of written communications beginning in January 2003, Glaze contested Aetna's calculation of his long-term disability benefits on two grounds: (1) Aetna failed to credit the 50 or 55 hours he worked per week when it determined his benefit amount; and (2) Aetna should have included pay earned

for mileage he drove each day in its calculation of his predisability income. R. 497-507, 566-67, 581-82, 602-04.[3]

Glaze also mentioned his need for plan documents in a number of these letters. In January 2003, Glaze wrote a lengthy complaint addressed to Aetna (with a copy sent to Sysco) about the way it had calculated his benefits. He noted in the middle of this letter: "I would need a copy of this contract in order to properly file an appeal." R. 494. In November 2004, Glaze sent a fax to Aetna explaining his delay in providing information requested by Aetna. He also noted: "Please send me the items I have requested (a copy of the contract between Aetna and Sysco, a corrected copy of my life insurance benefits, reimbursements on all the postage I have paid in the past and today, acknowledgment of revocation of beneficiary)." R. 532. In February 2005, Glaze wrote to Aetna: "I have not yet received a corrected copy of my life insurance benefits, a complete copy of the contract between Aetna Life Insurance Company and Sysco Food Services LLC . . . I would also like to receive all collective bargaining agreements Sysco and Aetna have been in the past three years." R. 543. In April 2005, Glaze wrote to Sysco: "I have asked several times in the past for a copy of the contract between Aetna and Sysco, only to find that there is no contract." R. 566. Sysco responded to

---

[3] Aetna and Sysco addressed both of these issues in letters to Glaze, explaining that the Plan limited the number of hours Aetna could consider in calculating the long-term benefit at 173 per month (or 40 per week), for $17.00 per hour. R. 555-56, 572-73. Addressing Glaze's mileage argument, Sysco explained that immediately before his period of disability began, he was paid $17.00 an hour and was not compensated for mileage. R. 595-96. Glaze raises no issue with these administrative determinations in his present action.

this letter within a week, mailing Glaze a copy of the Plan's certificate of coverage and Summary Plan Description. R. 8.

Glaze argues that Sysco, as plan administrator, failed to meet its obligation under ERISA to provide him with copies of plan documents. To trigger the statutory sanctions, the beneficiary's written request must give the administrator clear notice of exactly what information is being sought, if any. See *Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995); see also *Ames v. American Nat'l Can Co.*, 170 F.3d 751, 759 (7th Cir. 1999) (affirming district court's determination that plan participant did not provide "clear notice" of desired documents); *Hess v. Hartford Life and Accident Ins. Co.*, 91 F. Supp. 2d 1215, 1224 (C.D. Ill. 2000) (a beneficiary's request for information need not ask for specific documents by name).

Glaze's argument centers on the January 2003 fax addressed to Aetna and copied to Sysco. This fax, however, was not clear enough to trigger ERISA's civil penalty. The purported written request was buried in the middle of a long-running, single-spaced laundry list of apologies, admonitions, and complaints aimed at Aetna, not Sysco. R. 494-95. Read charitably, the general thrust of the letter is that Glaze disagreed with Aetna's benefit determination and hoped Aetna would resolve informally this "difference of opinion." R. 494. In the middle of this fax, Glaze wrote the single sentence at issue now: "I would need a copy of this contract to properly file an appeal." *Id.* To the extent Sysco should have identified

this sentence – addressed to Aetna – as invoking Sysco's duty to provide plan documents, the request was conditional on whether Glaze actually wished to pursue a formal appeal, a matter still uncertain given what appeared to be only an informal request for reconsideration directed at Aetna. Nothing in Glaze's fax indicated whether this contingency would come to pass due to further action on the part of Glaze or inaction on the part of Aetna.

Imposing ERISA's civil penalty on Sysco given the particular facts of this case would require plan administrators to send potentially voluminous copies of plan documents to beneficiaries in response to vague and conditional indications that the beneficiary might find such documents useful. Such an outcome is directly contrary to the "clear notice" requirement of *Anderson*. Under the circumstances, Glaze's single well-shrouded sentence, written in vague and conditional terms, does not rise to the level of "clear notice" necessary to warrant a civil penalty.[4]

---

[4]Glaze's subsequent faxes sent in November 2004 and February 2005 appear to have been more specific. In those faxes, Glaze used clear language and devoted substantial space to communicate his need for plan documents. These faxes cannot be the basis of a civil penalty, however, because they were sent only to Aetna and not to Sysco, the plan administrator. See *Romero v. SmithKline Beecham*, 309 F.3d 113, 119 (3d Cir. 2002) (Alito, J.) (ERISA does not impose the inflexible requirement of actually addressing the request to the plan administrator, but it does require actual receipt by the administrator).

IV.     *Attorney Fees and Costs*

Both sides have requested an award of attorney's fees and costs. Both requests are denied. Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In the Seventh Circuit "there is a 'modest presumption' in favor of awarding fees to the prevailing party, but that presumption may be rebutted." *Stark v. PPM America, Inc.*, 354 F.3d 666, 673 (7th Cir. 2004), quoting *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001). In determining whether to award fees and costs, the Seventh Circuit has often said that there is one fundamental consideration: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Stark*, 354 F.3d at 673, quoting *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 593 (7th Cir. 2000).

Glaze's request must be denied because he has not shown that defendants violated ERISA in any way. Nor is an award of fees and costs warranted in favor of the defendants. Defendants point out that Glaze has continued to press his claim that Aetna's contractual reimbursement scheme is impermissible under ERISA. As discussed earlier, this was the precise issue in *Northcutt v. General Motors Hourly-Rate Employees Pension Plan*, 467 F.3d 1031, 1038 (7th Cir. 2006). *Northcutt* was pending before the Seventh Circuit at the time parties filed their initial summary judgment briefs in this case, but was decided before parties filed their respective reply briefs. Plaintiff's counsel refused to dismiss voluntarily

Glaze's claim regarding Aetna's withholding of disability payments after the Seventh Circuit settled the issue. While defendants' frustration is understandable at one level (Glaze's counsel also argued *Northcutt* at the appellate level), it does not justify an award of costs and fees. The Seventh Circuit's decision is not necessarily the last word on the subject. There is no bar to a good faith request for the Seventh Circuit to reconsider its position or to a request for Supreme Court review. In *Northcutt,* the court also observed that challenges to the enforceability of reimbursement provisions were nothing new, but that the plaintiff had managed to advance "a novel theory." 467 F.3d at 1035 n.2. Glaze's counsel has represented that he intends to pursue this novel theory further on appeal, though this court has not received word of any petition for a writ of certiorari in *Northcutt* itself. In any event, these circumstances make an award of fees and costs inappropriate. While Glaze's theory has been unsuccessful so far, there is sufficient reason to believe his persistence at this stage is reasonable and in good faith.

## *Conclusion*

For the foregoing reasons, the court grants defendants' motion for summary judgment (Docket No. 44) on all claims. Plaintiff's motion for summary judgment (Docket No. 50) is denied on all claims. Both sides' requests for attorney fees and costs under ERISA are denied. Final judgment shall be entered accordingly.

So ordered.

Date: June 11, 2007

                                            */s/ David F. Hamilton*
                                            DAVID F. HAMILTON, JUDGE
                                            United States District Court
                                            Southern District of Indiana

Copies to:

Philip John Gutwein, II
BAKER & DANIELS
philip.gutwein@bakerd.com

Byron K. Mason
BAKER & DANIELS
bkmason@bakerd.com

Ronald E. Weldy
ABRAMS & WELDY
weldy@abramsweldy.com